UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | VIOLATIONS: 02-10257-REK |
| v. ) | 15 U.S.C. §§ 78ff, 78j(b) |
| ) | 17 C.F.R. § 240.10b-5 (Securities Fraud) |
| ) | 42 U.S.C. § 408(a)(7) (False Representation |
| ) | of Social Security Number) |
| ) | 18 U.S.C. § 1341 (Mail Fraud) |
| EDWARD R. VOCCOLA, ) | 18 U.S.C. § 1343 (Wire Fraud) |
| Defendant. | |

## INDICTMENT

The Grand Jury charges:

### GENERAL ALLEGATIONS

1. At all times material to this indictment, defendant EDWARD R. VOCCOLA was an individual residing in Hingham, Massachusetts.

2. From in or about February 2000 to in or about August 2000, defendant EDWARD R. VOCCOLA, engaged in a complex scheme to defraud brokerage firms in connection with the purchase of securities.

3. In the course of the scheme, defendant EDWARD R. VOCCOLA, purchased securities through thirteen brokerage accounts with eleven broker-dealers. All of the broker-dealers required that defendant EDWARD R. VOCCOLA pay for his securities purchases within three business days of the trade, pursuant to Federal Reserve regulations.

4. Many of the broker-dealers permitted defendant EDWARD R. VOCCOLA to purchase securities on margin, which means that they allowed him to borrow up to 50% of the




purchase price of a stock at the time of purchase.

5. Defendant EDWARD R. VOCCOLA submitted several applications to open brokerage accounts on which he falsified information about his employment status and annual income, in an attempt to induce the brokerage firms to do business with him. The following examples illustrate the misrepresentations made by defendant EDWARD R. VOCCOLA:

a. On or about April 12, 2000, defendant EDWARD R. VOCCOLA applied to open a margin account with Morgan Stanley Dean Witter, Inc. ("Morgan Stanley Dean Witter"). Defendant EDWARD R. VOCCOLA claimed that he was employed by State Street Bank and earned $700,000 annually, both of which statements he knew to be materially false and misleading. In fact, defendant EDWARD R. VOCCOLA was unemployed, having lost his job with State Street Bank just two days earlier.

b. On or about April 14, 2000, defendant EDWARD R. VOCCOLA applied to open a margin account with CIBC World Markets, Corp. ("CIBC"). In the application, defendant EDWARD R. VOCCOLA claimed that he was employed by State Street Bank and had an approximate annual income of $750,000, both of which statements he knew to be materially false and misleading.

c. On or about April 18, 2000, defendant EDWARD R. VOCCOLA applied to open a margin account with Prudential Securities. In the application, defendant EDWARD R. VOCCOLA claimed that he was employed by State Street Bank and earned $650,000 per year, both of which statements he knew to be materially false and misleading.

d. On or about April 24, 2000, defendant EDWARD R. VOCCOLA applied to open a margin account with Merrill Lynch Pierce Fenner & Smith, Inc. ("Merrill Lynch"). In

the application, defendant EDWARD R. VOCCOLA claimed that he was employed by State Street Corporation, which he knew to be materially false and misleading.

 e. On or about April 24, 2000, defendant EDWARD R. VOCCOLA applied to open a margin account with Fidelity Brokerage Services, Inc. ("Fidelity"). In the application, defendant EDWARD R. VOCCOLA claimed that he was employed by State Street Bank, which he knew to be materially false and misleading.

 f. On or about May 4, 2000, defendant EDWARD R. VOCCOLA applied to open a margin account with PaineWebber Incorporated ("PaineWebber"). In the application, defendant EDWARD R. VOCCOLA claimed that he was employed by State Street Corporation and earned $750,000 per year, both of which statements he knew to be materially false and misleading.

 g. On June 12, 2000, defendant EDWARD R. VOCCOLA applied to open a margin account with Legg Mason Wood Walker, Inc. ("Legg Mason"). In the application and directly to a representative of the firm, defendant EDWARD R. VOCCOLA claimed that he was employed by State Street Bank, which he knew to be materially false and misleading.

 h. On July 14, 2000, defendant EDWARD R. VOCCOLA applied to open a margin account with TD Waterhouse Investor Services, Inc. ("TD Waterhouse"). TD Waterhouse had previously restricted defendant EDWARD R. VOCCOLA's trading in an account that he had opened with them because of his use of bad checks. To conceal his identity from TD Waterhouse, defendant EDWARD R. VOCCOLA submitted a false social security number on his account application. On the application, VOCCOLA also misrepresented that he was employed by State Street Corp., which he knew to be materially false and misleading.

i. On August 21, 2000 defendant EDWARD R. VOCCOLA applied to open a third margin account with TD Waterhouse. TD Waterhouse had restricted defendant EDWARD R. VOCCOLA's trading in two accounts, including the account referenced in "h" above, because of his purchase of securities with worthless checks. Again, to conceal his identity from TD Waterhouse, defendant EDWARD R. VOCCOLA submitted a false social security number on his account application. On the application, defendant EDWARD R. VOCCOLA misrepresented that he was employed as an attorney for "State Street," which he knew to be materially false and misleading.

6. It was further part of the pattern and practice of defendant EDWARD R. VOCCOLA to cause the brokerage firms to mail him checks which were delivered by the U.S. Postal Service.

7. Defendant EDWARD R. VOCCOLA then used the checks mailed by the brokerage firms, among others, to purchase securities through broker-dealers using the facilities of national securities exchanges. This practice allowed defendant EDWARD R. VOCCOLA to engage in "free-riding." "Free-riding" is the fraudulent practice of purchasing stock without the ability or intention to pay for it unless the stock rises in value, thereby allowing the investor to shift the risk of a decline in the value of stock to the brokerage firm.

8. Defendant EDWARD R. VOCCOLA purchased over $7 million of securities without intending to pay the purchase price unless the stock increased in value. Defendant EDWARD R. VOCCOLA purported to pay for the securities purchased with 38 worthless checks in the total amount of more than $4.9 million. During the period in question, defendant EDWARD R. VOCCOLA often engaged in a series of free-riding transactions involving shares a

company's stock. Examples of such securities include shares in the following companies: Triquint Semiconductor Industries, Inc.; Genome Therapeutics, Inc.; Gene Logic, Inc.; Pfizer Inc.; Sina.com; and Rambus. On other occasions, defendant EDWARD R. VOCCOLA engaged in free-riding in a company's stock on a single day.

    a. On June 13, 2000, the day after defendant EDWARD R. VOCCOLA opened a margin account with Legg Mason, defendant EDWARD R. VOCCOLA ordered the purchase of 4,000 shares of Gene Logic, Inc. common stock for more than $130,000.00. He purported to pay for that purchase the same day with a check drawn on his closed Charles Schwab account in the amount of $67,500. On June 15, 2000 defendant EDWARD R. VOCCOLA deposited another check drawn on his closed Charles Schwab account in the amount of $78,000. During the period June 13 through 23, defendant EDWARD R. VOCCOLA purchased securities worth over $1 million in his Legg Mason account but deposited no additional funds.

    b. On Friday, June 23, 2000, after Charles Schwab returned both checks to Legg Mason unpaid with the notation "account closed," Legg Mason sold the securities in defendant EDWARD R. VOCCOLA's account and restricted further activity, including withdrawals. The balance in the account was approximately $100,000.

    c. On Monday, June 26, 2000, defendant EDWARD R. VOCCOLA met with Legg Mason employees in Boston to withdraw the profits of his trading. Legg Mason refused to release the funds because defendant EDWARD R. VOCCOLA had not paid for the trades. On or about the week of June 26, 2001, defendant EDWARD R. VOCCOLA sent by telefax from Massachusetts to Legg Mason in Maryland a copy of his Charles Schwab account statement,

which showed an account value of $446,700.86, in support of his argument that Legg Mason should release the gains in the account. The account statement purported to show that defendant EDWARD R. VOCCOLA had the financial resources to purchase the securities and had not been free-riding. Defendant EDWARD R. VOCCOLA stated in the accompanying letter that he was unable to produce account statements after April 2000 because his wife had taken them. The account value shown on the Charles Schwab statement was artificially inflated by defendant EDWARD R. VOCCOLA's deposit of worthless checks, and, at the time defendant EDWARD R. VOCCOLA sent the account statement, the account had been closed for more than two months.

9. As a result of defendant EDWARD R. VOCCOLA's fraudulent representations and scheme and artifice to defraud, including his deposit of more than $4.9 million in worthless checks, brokers suffered losses of more than $190,000.

COUNTS ONE - ELEVEN:
Securities Fraud - 15 U.S.C. §§ 78j(b) and 78ff; 17 C.F.R. §240.10b-5

10. The allegations contained in paragraphs 1 through 9 are incorporated herein by reference.

11. On or about the dates specified below, in the District of Massachusetts, and elsewhere,

EDWARD R. VOCCOLA

defendant herein, by use of the means and instrumentalities of interstate commerce and of the mails and of facilities of national securities exchanges, did willfully use and employ, in connection with the purchase or sale of securities, as identified below, manipulative and

6

deceptive devices and contrivances, and did willfully make untrue statements of material fact and omit to state material facts necessary in order to make the statements made not misleading, and did willfully engage in acts, practices, and courses of business which operated and would operate as a fraud and deceit upon a person in connection with the purchase and sale of securities, in contravention of the rules and regulations of the Securities and Exchange Commission, to wit, 17 C.F.R. §240.10b-5.

| Count | Date | Description of Transaction |
|---|---|---|
| 1. | February 10, 2000 | Purchase of 2500 shares of Triquint Semiconductor Industries, Inc. stock through an account at Charles Schwab (cost of $570,207). |
| 2. | March 14, 2000 | Purchase of 7,000 shares of Genome Therapeutics, Inc. stock through an account at Quick & Reilly (cost of $241,775). |
| 3. | March 20, 2000 | Purchase of 7,000 shares of Genome Therapeutics, Inc. stock through an account at TD Waterhouse (cost of $193,120). |
| 4. | April 11, 2000 | Purchase of 15,000 shares of Gene Logic, Inc. stock through an account at Charles Schwab (cost of $487,798). |
| 5. | April 12, 2000 | Purchase of 7,000 shares of Gene Logic, Inc. stock for through an account at Morgan Stanley Dean Witter (cost of $240,077). |
| 6. | April 14, 2000 | Purchase of 6,500 shares of Gene Logic, Inc. stock for through an account at CIBC World Markets (cost of $194,697). |
| 7. | April 24, 2000 | Purchase of 2000 shares of Pfizer Inc. stock through an account at Merrill Lynch (cost of $86,880). |

| | | |
|---|---|---|
| 8. | May 10, 2000 | Purchase of 3,500 shares of Broadvision, Inc. stock through an account at Paine Webber (cost of $161,336). |
| 9. | May 25, 2000 | Purchase of 4,900 shares of Sina.com stock through an account at Fidelity (cost of $202,000). |
| 10. | June 16, 2000 | Purchase of 2000 shares of Rambus stock through an account at Legg Mason (cost of $153,365) |
| 11. | August 28, 2000 | Purchase of 1,800 shares of Bea Systems, Inc. stock through an account at Spartan Brokerage Services, Inc. (cost of $107,575) |

All in violation of Title 15, United States Code, Section 78j(b), 78ff, and Title 17, Code of Federal Regulations, Section 240.10b-5.

## COUNTS TWELVE AND THIRTEEN
Falsely Representing Social Security Numbers - 42 U.S.C. 408(a)(7)

11. The allegations contained in paragraphs 1 through 9 are incorporated herein by reference.

12. On or about the dates specified below in the District of Massachusetts, and elsewhere,

### EDWARD R. VOCCOLA

defendant herein, with intent to deceive, falsely represented numbers to be the social security account number assigned by the Commissioner of Social Security to him, when in fact such numbers were not the social security account number assigned by the Commissioner of Social Security to him and thereby obtained payment and other benefits to which he was not entitled, as set forth below:

| Count | Date | Description |
|---|---|---|
| 12. | July 14, 2000 | Account opening application to TD Waterhouse using Social Security |

| | | |
|---|---|---|
| 13. | August 21, 2000 | Account opening application to TD Waterhouse using Social Security Number 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 |

Number 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

All in violation of Title 42 United States Code Section 408(a)(7).

## COUNTS FOURTEEN - SEVENTEEN
Mail Fraud - 18 U.S.C. §1341

13. The allegations contained in paragraphs 1 through 9 are incorporated herein by reference.

14. On or about the dates specified below, in the District of Massachusetts and elsewhere,

### EDWARD R. VOCCOLA

defendant herein, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, placed in a post office, or authorized depository for mail, matters and things whatever to be sent or delivered by the Postal Service, or took or received therefrom, such matters or things, or knowingly caused to be delivered by mail matters and things for the purpose of executing such scheme and artifice, as set forth below:

| Count | Date | Description |
|---|---|---|
| 14. | March 31, 2000 | Checks mailed by Charles Schwab |
| 15. | May 17, 2000 | Checks mailed by Paine Webber |
| 16. | July 14, 2000 | Checks mailed by TD Waterhouse |
| 17. | April 1, 2000 | March account statement sent by Charles |

Schwab

All in violation of 18 United States Code, Section 1341.

## COUNT EIGHTEEN
### Wire Fraud - 18 U.S.C. §1343

16. The allegations contained in paragraphs 1 through 9 are incorporated herein by reference.

17. On or about the dates specified below, in the District of Massachusetts and elsewhere,

### EDWARD R. VOCCOLA

defendant herein, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, did transmit and cause to be transmitted by means of wire communication in interstate commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, as set forth below:

| Count | Date | Description |
| --- | --- | --- |
| 18. | 6/27/00 | Letter sent by facsimile transmission from Edward Voccola in Hingham, Massachusetts to Legg Mason Wood Walker, Inc. in Baltimore, Maryland enclosing copy of Charles Schwab account statement. |

All in violation of Title 18 United States Code, Section 1343.

A TRUE BILL

*Donald J. Flanagan*
FOREPERSON OF THE GRAND JURY

*[signature]*
ASSISTANT U.S. ATTORNEY

DISTRICT OF MASSACHUSETTS; Sept. 10, 2002

Returned into the District Court by the Grand Jurors and filed.

*[signature]*
DEPUTY CLERK  4:00 pm